IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUDY J. MAESTAS,

                    Plaintiff,

    vs.                                           CIVIL NO.  04-249 LFG/WDS

NEW MEXICO DEPARTMENT
OF LABOR; CONROY CHINO,
Cabinet Secretary, and JOHN MINKS,
Public Works Bureau Chief, in their
official and individual capacities.

                    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTIONS TO DISMISS

THIS MATTER is before the Court on Defendant New Mexico Department of Labor's ("DOL") Motion to Dismiss [Doc. 12] and individual Defendants Conroy Chino's and John Minks' similar Motion to Dismiss [Doc. 14].  The Court consider the motions, Plaintiff's responses[1] and the Defendants' replies and determines that oral argument is not necessary.  This matter may be resolved based on the parties' submissions.

### Background

Rudy J. Maestas ("Maestas") filed suit against the New Mexico Department of Labor, Cabinet Secretary Conroy Chino ("Chino"), as well as against John Minks ("Minks"), Chief of the Public

---

[1]Based on Plaintiff's characterization of his pleadings, it is unclear whether he filed a single or joint response to both Motions to Dismiss.  For example, Plaintiff filed a "Response to Defendant New Mexico Department of Labor's Motion to Dismiss," consisting of a portion of one page and a blanket denial of the DOL's "allegations."  [Doc. 17.] However, at the same time, Plaintiff filed what he called a "Memorandum in Opposition to Motions: Defendant New Mexico Department of Labor's Motion to Dismiss and Defendants Conroy Chino and John Minks' Motion to Dismiss. [Doc. 18.]  It appears that Plaintiff intended to file a joint response to the two motions, a practice that this district's local rules do not expressly permit.  *See* Administrative Order #92-88.  To ensure that the motions are decided on their merits rather than on technical default, the Court will consider the joint response as properly filed.

Works Bureau, in both their individual and official capacities.  Maestas' original complaint raised solely claims of defamation or, alternatively, *prima facie* tort.  However, on March 1, 2004, State trial judge James A. Hall authorized Maestas to file a first amended complaint.  The amended complaint raised new claims, including the assertion that Maestas' federally protected civil rights were violated by Defendants.  (Amended Complaint, p. 8, § 4).  Based on allegations of violations of federally protected rights, Defendants removed the case from state court to a federal forum.

The Defendants' motions assert that Maestas' complaint fails to withstand scrutiny pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  More specifically, Defendants argue that they should be dismissed because:  (1) the DOL is not a "person" for § 1983 purposes; (2) the individual defendants are immune from suit based on qualified immunity; and (3) the State Legislature has not waived immunity as to any of these Defendants for the state torts asserted.

## Section 1983 Claim

Section 1983 authorizes a court to grant relief when a party's federally protected rights, either those arising under the Constitution or under federal laws, have been violated by a state or local official or other person who acted under the color of state law. 42 U.S.C. § 1983; Pierce v. Gilchrist, 359 F.3d 1279, 1285 (10th Cir. 2004); Martin A. Schwartz and John E. Kirkland, Section 1983 Litigation, (4th Ed), § 1.01.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

Thus, it is clear that § 1983 authorizes imposition of liability against "[e]very person" who, acting under the color of state law, violates another's federally protected rights.  However, in <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309-10 (1989), the Supreme Court determined that states, state agencies, and state officials sued in an official capacity are not "persons" subject to suit under § 1983.

Maestas brings his action not only against the DOL, but also against individual state officials acting in their official capacities, i.e., against the DOL's Cabinet Secretary and Public Works Bureau Chief.  The Court must first determine, therefore, whether the DOL is a person under <u>Will v. Michigan Dept. of State Police</u>.  Next, the Court must determine whether the claims against individual state officials, as asserted against them in their official capacities, can survive.

The DOL is a legislatively created entity under New Mexico's Labor Department Act.  NMSA 1978, § 9-18-1.  It is a cabinet level department and part of the State of New Mexico's executive department.  NMSA § 9-18-4.

The holding in <u>Will</u> that states are not § 1983 persons applies to state agencies as well.  <u>Will</u>, 491 U.S. at 64; <u>Devlin v. Smalley</u>, 4 F. Supp. 2d 1315, 1321 (D. Utah 1998).  *See also* <u>Howlett by Howlett v. Rose</u>, 496 U.S. 356, 365 (1990)(<u>Will</u> applies to state and "arms of state").  Thus, the immunity granted to the states extends to entities created by the state by which it operates as an *alter ego* or instrumentality.  *See* <u>Mascheroni v. Board of Regents of Univ. of California</u>, 28 F.3d 1554, 1559 (10th Cir. 1999) (holding that state entity like university board of regents was arm of the state and therefore, immune from suit in federal court), *overruled on other grounds by* <u>Boyler v. Cordant Technologies</u>, 316 F. 3d 1137 (10th Cir. 2003).  In addition, while individual state officials are literally "persons," when sued in their official capacities, the lawsuit is actually one against the officials' office.  <u>Will</u>, 491 U.S. at 71.

In his response, Maestas offers neither argument nor authority challenging DOL's position that the state and the official capacity claims should be dismissed.  Maestas apparently concedes this point.  In his response to the Department's motion to dismiss, he writes:

> [e]ven if Plaintiff Maestas' allegations implicating relief under 42 U.S.C. 1983 are found to be wanting against some of the Defendants, as Defendant New Mexico Department of Labor contends because it is not a "person," and Defendant Chino and Minks in their official capacity also represent the State and therefore are also shielded by the Eleventh Amendment, Plaintiff's complaint should survive the motion to dismiss as to Defendant Chino and Minks, who have been named as Defendants in both their official capacity and in their *individual capacity*, which would not shield them from suit.

(Memorandum in Opposition, Doc. 18, p. 4) (emphasis in original).

The law is clear.  The Eleventh Amendment immunizes states from suits in law or equity.  *See* Cory v. White, 457 U.S. 85, 90-91 (1982).  Moreover, neither the state nor its officials when sued in their official capacities are subject to liability claims under § 1983.  Mascheroni, 28 F.3d at 1559.  Thus, Maestas' § 1983 claims against the DOL as well as Maestas' official capacity claims against Chino and Minks must be dismissed with prejudice.

While the state and official capacity claims are dismissed, Will did not upset the settled rule that state officials are § 1983 persons when sued individually, even when the suit is based upon their official conduct.  Hafer v. Melo, 502 U.S. 21, 26-28, 112 S. Ct. 358 (1991).  As Fed. R. Civ. P. 12(b)(6) requires that the Court accept as true the well-pleaded allegations of the complaint, Maestas' § 1983 individual capacity claims against both Chino and Minks survive the DOL's 12(b)(6) motion to dismiss.  At this stage, the Court makes no determination as to the merits of Maestas' claims, but only concludes that if the allegations of the complaint are true, Maestas has stated individual capacity claims against both individual defendants under § 1983.

4

**<u>Qualified Immunity</u>**

Having determined that Maestas' individual capacity claims against Chino and Minks are not subject to dismissal under <u>Will v. Michigan Dept. of State Police</u> and <u>Mascheroni v. Board of Regents of Univ. of California</u>, the Court now turns its attention to the issue of qualified immunity.

In <u>Saucier v. Katz</u>, 533 U.S. 194, 202, 121 S. Ct. 2151, 2155-56 (2001), the Supreme Court reminded trial courts of the importance of promptly resolving issues relating to qualified immunity. This is so because the doctrine of qualified immunity not only shields a public official who performs a discretionary act from liability, but also from the burdens of discovery and trial. Delays in resolving the issue of qualified immunity may compel a party otherwise entitled to the qualified immunity defense to lose the very benefit of that immunity. While <u>Saucier</u> involved a motion for summary judgment as to the qualified immunity defense and the defense is raised here in the context of a motion to dismiss, the reasoning that qualified immunity should be decided early on applies equally at the Rule 12(b)(6) stage.

Here, Chino and Minks seek dismissal of Maestas' individual capacity claims against them, stating that they are immune from liability and from suit because the actions alleged by Maestas were performed by them as part of their discretionary functions in the performance of their duties as State government officials. They argue that they are shielded from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Dixon v. Richer</u>, 922 F.2d 1456, 1459 (10th Cir. 1991).

In support of their position, Chino and Minks refer to paragraph 4, page 8 of Maestas' Amended Complaint which asserts a general violation of Maestas' "federally protected civil rights . . . pursuant to 42 U.S.C. § 1983." They argue that nowhere in the Complaint or Amended Complaint does Maestas identify a specific constitutional right that was violated, nor does he cite to any specific

5

federal civil rights or other statute in support of his civil rights claim.  Defendants finally argue that no Supreme Court or 10th Circuit Court of Appeals decision or majority opinion demonstrates that the conduct alleged was in violation of any clearly established law.

In reviewing a defense of qualified immunity through a Rule 12(b)(6) motion to dismiss, the court examines the pleadings and "the allegations in the complaint and any reasonable inferences . . . from them," drawing all inferences in favor of the plaintiff.  Dill v. City of Edmond, Okl., 155 F.3d 1193, 1203-04 (10th Cir. 1998).  In the past, the Tenth Circuit required a plaintiff to meet a heightened pleading standard upon a defendant's assertion of the defense of qualified immunity.  Currier v. Doran, 242 F.3d 905, 911 (10th Cir.), cert. denied, 534 U.S. 1019 (2000).  In Currier, however, the Court held that the heightened pleading requirement did not survive the Supreme Court's decision in Crawford-El v. Britton, 523 U.S. 574 (1998).  242 F.3d at 916.  Thus, in looking at a motion to dismiss based on qualified immunity, the court is typically limited to customary 12(b)(6) standards.  Dill, 155 F.3d at 1204.  The court follows the traditional two-step test to analyze the issue of qualified immunity, i.e., whether under Rule 12(b)(6) standards the defendant's alleged actions violated a constitutional or statutory right, and if so whether the constitutional right was clearly established so that reasonable official would have understood their conduct violated the right.  Eaton v. Meneley, 180 F. Supp. 2d 1247, 1254 (D. Kan. 2002) (citing Dill, 155 F.3d at 1204).  "To be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains."  Id. (internal citation omitted).

6

In this case, Defendants have come forward and affirmatively demonstrated that Maestas failed to allege any specific constitutional right that was violated, failed to articulate any federal statute or federally protected right that was allegedly violated by Defendants' action, and failed to identify any Supreme Court or 10th Circuit opinion indicating that the alleged conduct violates clearly established law.  The fact that deference is owed to a plaintiff at the Rule 12(b)(6) stage does not allow the court to assume that plaintiff can prove facts not alleged or that the defendants have violated the laws in ways that have not been alleged.  <u>Associated General Contractors v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  "[I]f the facts narrated by the plaintiff 'do not at least outline or adumbrate' a viable claim, his complaint cannot pass Rule 12(b)(6) muster."  <u>Hamrick v. Farmers Alliance Mutual Ins.</u>, 2004 WL 955273 (D. Kan. Apr. 27, 2004) (internal citation omitted).  Here, even after accepting as true the well-pleaded allegations and drawing all reasonable inferences in favor of Plaintiff, the Court agrees with Defendants that Plaintiff simply fails to make the necessary allegations.  Plaintiff neither identifies a clearly established right nor states how Defendants violated it.  In other words, Plaintiff's complaint does not plainly and directly identify a constitutional right that was allegedly violated.  At best, Plaintiff's amended complaints relies on conclusions or opinions and does not even link those conclusions to the existence of a clearly established right or violation of that right.

Plaintiff's response to Defendants' motion to dismiss only serves to confirm the lack of necessary allegations with respect to Defendants' assertion of the qualified immunity defense.  Indeed, Maestas' response to the motion to dismiss makes no argument whatsoever to rebut Defendants' qualified immunity claim.  Maestas simply argues that the complaint, if taken as true, is sufficient to withstand pleading requirements; and that Maestas should have an opportunity to "flesh out" his legal theories.  The only immunity argument raised in the response to the motion to dismiss deals with

immunity under the Tort Claims Act. (Memorandum in Opposition, p. 6). Maestas' response does not address qualified immunity.

Because of the importance of a prompt resolution of the qualified immunity issue under Saucier v. Katz, and because Plaintiff's allegations do not pass muster at the Rule 12(b)(6) stage, the Court concludes that Defendants' motion to dismiss based on qualified immunity should be granted. Thus, the individual capacity claims asserted by Maestas against Chino and Minks are dismissed, without prejudice.

### Defamation and Prima Facie Tort

Next, the Court must analyze whether Plaintiff's two state law tort claims can survive as asserted against the DOL and the individual officials. Maestas asserts two separate tort claims against all Defendants: defamation and *prima facie* tort. Defendants request dismissal of both tort claims asserting that the New Mexico Legislature has not waived immunity for these torts under the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 *et seq.*

It is a fundamental doctrine at common law that no sovereign state can be sued in its own courts or in any other without its consent and permission. Palmer v. State of Ohio, 248 U.S. 32, 34 S. Ct. 16 (1918); Sangre de Cristo Dev. Corp. v. City of Santa Fe, 84 N.M. 343, 503 P.2d 323 (1972), *cert. denied*, 411 U.S. 938 (1973). In New Mexico, the judicially adopted doctrine of sovereign immunity came to an end in 1972 when a tragic accident occurred involving a collision of a school bus with a cattle truck on a narrow bridge constructed and maintained by the State Highway Department. The collision took the lives of numerous children and adults. In one lawsuit brought against the State of New Mexico arising from this accident, the New Mexico Supreme Court abolished sovereign immunity for tort actions. Hicks v. State, 88 N.M. 588, 590, 544 P.2d 1153 (1976), *later superseded by statute* NMSA 1978 §§ 41-4-1 to 27. In Hicks (I), the Supreme Court

8

determined that the long-held belief that the "sovereign can do no wrong" was both archaic and unjust and that the rationalizations which had been used to advance the doctrine of sovereign immunity were invalid.  However, so as to allow the State an opportunity to prepare for the abolishment of this doctrine, the high court gave its ruling prospective application for torts occurring after July 1, 1976. Hicks (II), Order on Rehearing, 88 N.M. at 593.

The Supreme Court's action in abolishing sovereign immunity for tort actions caused the State Legislature to respond by enacting the Tort Claims Act which reinstated governmental immunity except in eight specific classes of action.  NMSA 1978, § 41-4-1 *et seq.*; Firemen's Fund Ins. Co. v. Tucker, 95 N.M. 56, 618 P.2d 894 (Ct. App. 1980).

Section 41-4-2 of the Tort Claims Act provides in relevant part:

> [i]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . .  Further, § 41-4-4 of the Act declares that governmental entities and public employees, while acting within the scope of their duties, shall be immune from liability from any tort, except as waived by the Act.  Tompkins v. Carlsbad Irrigation Dist., 96 N.M. 368, 630 P.2d 766 (Ct. App. 1981).

With the adoption of the New Mexico Tort Claims Act, New Mexico's appellate courts concluded that a cause of action does not exist against the State or governmental entity unless immunity has been specifically waived.  In Begay v. State, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct. App. 1985), *rev'd on other grounds*, Smialek v. Begay, 104 N.M. 375, 721 P.2d 1306 (1986), the Court of Appeals stated:

> [I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . .
>
> Further, § 41-4-4 declares that governmental entites and public employees, while acting within the scope of their duties, shall be immune from liability for any tort except as waived by the Act.

> Tompkins v. Carlsbad Irrigation Dist., 96 N.M. 368, 630 P.2d 767
> (Ct. App. 1980).
>
> The public policy declaration of § 41-4-2, and immunities proviso of
> § 41-4-4, taken together, require that plaintiffs' cause of action must
> fit within one of the exceptions to the immunity granted to
> governmental entities and public employees.

Begay, 104 N.M. 483, 486, 723 P.2d 252, 255.

With the adoption of the New Mexico Tort Claims Act, the State of New Mexico consented to suits against its entities and employees acting within the scope of their duty, but only for very specific, enumerated torts. *See, e.g.,* §§ 41-4-5 to 12. Section 41-4-12 waived immunity in a broad category of acts or omissions by law enforcement officers.

> The immunity granted pursuant to subsection A of § 41-4-4, NMSA
> 1978, does not apply to liability for personal injury, bodily injury,
> wrongful death or property damage resulting from assault, battery,
> false imprisonment, false arrest, malicious prosecution, abuse of
> process, libel, slander, defamation of character, violation of property
> rights or deprivation of any rights, privileges or immunity secured by
> the Constitution and laws of the United States or New Mexico when
> caused by *law enforcement officers* while acting within the scope of
> their duties.

§ 41-4-12 (emphasis added).

In this case, Maestas asserts a cause of action in defamation. However, by its very terms, § 41-4-12 waives immunity for defamation only when "caused by law enforcement officers . . . ." Id. Simply stated, there is no waiver of immunity for defamation when caused by anyone other than law enforcement officers. Maestas does not allege, nor indeed could he establish, that Chino or Minks are law enforcement officers under the terms of the statute. *See e.g.*, Dunn v. State ex rel. Tax & Revenue, 116 N.M. 1, 859 P.2d 469 (Ct. App. 1983) (the director of the Motor Vehicle Division, whose duties involve principally administrative matters and who did not serve as a full-time law enforcement officer whose principal duties involved holding in custody persons accused of criminal

10

offenses, maintaining public order or maintaining arrests for crimes, was not a "law enforcement officer" within contemplation of this section).  New Mexico courts have previously held that parole officers and supervisors are not law enforcement officers; <u>Vigil v. Martinez</u>, 113 N.M. 714, 832 P.2d 405 (Ct. App. 1992); that a mayor is not a law enforcement officer under this section, <u>Montes v. Gallegos</u>, 812 F. Supp. 1165 (D. N.M. 1992); that district attorneys and their staffs are not law enforcement officers, <u>Coyazo v. State</u>, 120 N.M. 47, 897 P.2d 234 (Ct. App. 1995).

Maestas' tort claim for defamation is simply not a tort for which the State has waived its immunity.  Therefore, Maestas' defamation claim against the State and its officers, even if taken as true, is not a viable claim as the State has not waived its immunity for defamation when the defamatory act was committed by a public employee other than a law enforcement officer.

Maestas' claim for *prima facie* tort meets the same fate.  In <u>Derringer v. State</u>, 133 N.M. 721, 68 P.3d 961 (Ct. App.), *cert. denied*, 133 N.M. 727 (2003), a plaintiff sought to sue a public employee for *prima facie* tort.  The Court of Appeals stated:

> Plaintiff's complaint included a claim for prima facie tort, which he argues was improperly dismissed.  Governmental entities and public employees, while acting within the scope of duty, are granted immunity from liability from tort except as waived by the specific provisions of the Tort Claims Act.  NMSA. 1978, § 41-4-4(A) (1976, prior to 2001).  Defendants Livestock Board and Director Wortman come within the definition of "governmental entity" and "public employee." *See* NMSA. 1978, § 41-4-3(B), (F) (1995).  Prima facie tort is not included in specific provisions of the Tort Claims Act and, therefore Defendants enjoy immunity from Plaintiff's claims.

<u>Id.</u>, 133 N.M. at 725, 68 P.3d at 965.

In sum, the Court determines that Maestas' § 1983 claims against the State DOL and § 1983 official capacity claims against Chino and Minks should be dismissed with prejudice.  Maestas' individual capacity § 1983 claims against Chino and Minks are dismissed without prejudice based on

11

qualified immunity.  Maestas' tort claims against the State DOL, Chino and Minks are dismissed with

prejudice as there is no waiver of immunity.

### Amended Complaint

Maestas' Amended Complaint appeared to raise only three claims--defamation, *prima facie*

tort, and a claim arising under 42 U.S.C. § 1983.  *See also* parties' Initial Pretrial Report [Doc. 11].

However, in response to the motions to dismiss, Maestas argues:

> Contrary to Defendants' view of this case as simply one alleging
> defamation, Plaintiff's complaint alleged much more, citing several
> legal theories and causes of action, including defamation, prima facie
> tort, protection under the Americans with Disabilities Act (Plaintiff
> Maestas is a kidney transplant patient with continuing need for health
> considerations), creation of a hostile work environment, mistreatment
> because of his political affiliation (he is a Republican and Defendants
> Conroy Chino and John Minks are Democrats, with Secretary Chino
> being an appointee of the current Democratic administration and Mr.
> Minks aspiring to be Director of the Labor and Industrial Division of
> which Plaintiff and he are a part, and is a financial contributor of a not
> insignificant amount of money to the current Governor), behaviors
> against Plaintiff Maestas that rise to the level of intentional torts,
> failure to properly supervise, and placing Plaintiff Maestas' job in
> jeopardy from the consequences of Defendants' sabotaging of his
> authority and performance of his duties.

(Memorandum in Opposition, p. 2)

The Court does not view the amended complaint as asserting the additional causes of action

referred to above.  *See also* Initial Pretrial Report.  [Doc. 11.]  Instead, in his response to the motions

to dismiss, Maestas refers to a hodgepodge of *possible* legal theories. However, the mere recitation

of or reference to legal theories is insufficient to state a claim.  There appears to be no factual

predicate or legal basis for some of these newly presented legal theories.  *See* Fed. R. Civ. P. 11.  For

example, Maestas' response indicates that he intended to state a claim under the Americans With

Disabilities Act.  The Court is unsure as to how an Americans With Disabilities Act claim against the

12

state can survive the Supreme Court's holding of <u>Board of Trustees of the Univ. of Alabama v.</u> <u>Garrett</u>, 531 U.S. 356, 121 S. Ct. 955 (2001), or whether Maestas has exhausted administrative requirements under <u>McBride v. Citgo Petroleum Corp.</u>, 281 F.3d 1099, 1105 (10th Cir. 2002), and <u>Khader v. Aspin</u>, 1 F.3d 968, 970-71 (10th Cir. 1993).

Similarly, Maestas makes reference to a hostile work environment, but it is unclear whether Maestas is seeking to assert a claim under Title VII of the Civil Rights Act. If so, Maestas' pleadings fail to show administrative exhaustion of the Title VII complaint. Administrative exhaustion is, of course, a jurisdictional prerequisite to filing a Title VII claim. <u>McBride</u>, 281 F.3d at 1105; <u>Doerr v.</u> <u>Colo. Division of Youth Svcs</u>, 2004 WL 838197 at *2 (10th Cir. Apr. 20, 2004).

Maestas also refers to "free speech" in his Amended Complaint, but it is unclear whether the reference is to refute Minks' alleged defamatory statements or if Maestas is asserting a First Amendment Claim on his own behalf in this lawsuit.

In any event, none of these claims, whether actually made or only anticipated would withstand Rule 12(b)(6) scrutiny as they are pled. Thus, to the extent Plaintiff believes he has pled additional claims, they are dismissed without prejudice. This dismissal, along with the Court's dismissal of Maestas' individual capacity § 1983 claims would allow Maestas to file a new lawsuit if he is so inclined, and to briefly and succinctly state claims he wishes to pursue and for which he has a sound factual and legal basis. Maestas, could not, of course, plead any claim which was dismissed with prejudice herein.

IT IS THEREFORE ORDERED that both Motions to Dismiss [Doc. Nos. 12 and 14] are

GRANTED and that this matter is DISMISSED in its entirety as described herein.

_____

Lorenzo F. Garcia
Chief United States Magistrate Judge

14